UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2016 APR 21  A 10: 26

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL BOUGIE | ) |
| | ) |

No. 1:15-cr-102-01-LM

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United

States of America, by its attorney, Emily Gray Rice, United States Attorney for the District of

New Hampshire, and the defendant, Michael Bougie, and his attorney, Paul J. Garrity, Esquire,

enter into the following Plea Agreement.

1.   The Plea and Offense.

The defendant, Michael Bougie, agrees to plead guilty to Counts One, Two and Three of

an indictment which charges the defendant with the unlawful distribution of oxycodone, a

Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing

stipulations identified in section 6 of this agreement.

2.   The Statute and Elements of the Offenses.

A.   The Statute

21 U.S.C. § 841(a)(1) provides, in pertinent part:

(a) Unlawful acts

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or
intentionally–

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture,
distribute, or dispense, a controlled substance.

21 U.S.C. § 841(a)(1)(West 2015).

B.     Elements of the Offenses.

1.  Counts One through Three- Unlawful Distribution of Oxycodone

The defendant understands that the offenses contained in Counts One, Two and Three of the indictment have the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

FIRST, that on the dates charged in the indictment, the defendant distributed the controlled substance oxycodone;

SECOND, that the defendant knew that the substances were oxycodone; and

THIRD, that the defendant knowingly and intentionally distributed such controlled substances.

3.   Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the United States would prove the following facts beyond a reasonable doubt:

In May, 2014, a United States Drug Enforcement Administration ('DEA") Task Force officer ("TFO") made the following controlled purchases of 30 mg oxycodone pills from the defendant:

Count One:    May 5, 2014          (12) 30 mg oxycodone pills

On May 5, 2014, the DEA TFO sent a text message to a female associate of the defendant who was known to law enforcement as an oxycodone user. In the text message, the DEA TFO told the female that he wanted to purchase 10 30 mg oxycodone pills. The female replied via text message that the DEA TFO would need to purchase at least 12 oxycodone pills per transaction and stated the price for the 12 pills was $400. The two agreed to meet at a Subway restaurant in Rochester, New Hampshire.

3

Once there, the female exited a vehicle and approached the DEA TFO's undercover vehicle where the female introduced herself as "Becky" and informed the DEA TFO that they had to travel to a location on Bridge Street, Rochester.   The DEA TFO then drove "Becky" to the location where they were met by the defendant, who entered the DEA TFO's vehicle.

While inside of the DEA TFO's vehicle, the DEA TFO handed the defendant $400 in serialized currency. The defendant then exited the vehicle, walked in the direction of 160 Charles Street, and returned to the vehicle a few minutes later where the defendant handed the DEA TFO 12 30 mg oxycodone pills. Prior to exiting the vehicle, the defendant told the DEA TFO that the DEA TFO could contact the defendant directly for pills and provided the DEA TFO his telephone number. The DEA TFO subsequently identified the defendant from a police booking photo. The DEA Laboratory confirmed the pills were in fact 30 mg oxycodone tablets.[1]

Count Two:   May 12, 2014          (12) 30 mg oxycodone pills

On May 12, 2014, the DEA TFO arranged through text messaging with the defendant to purchase 12 30 mg oxycodone pills for $390. The DEA TFO subsequently picked the defendant up at his residence in Rochester. The defendant instructed the DEA TFO to drive to the area of Planet Fitness in Rochester so the defendant could meet his pill source.

Upon arrival, the DEA TFO handed the defendant $390 in serialized currency. The defendant exited the undercover vehicle, walked to a different part of the parking lot and made several telephone calls, after which he was picked up by a separate vehicle. Shortly after, the DEA TFO received a telephone call from the defendant, who asked the DEA TFO to pick him up on the other side of the Planet Fitness, which the DEA TFO did.

---

[1] For all transactions referenced herein, the DEA laboratory confirmed the tablets were in fact 30 mg oxycodone tablets.

4

Once inside the undercover vehicle, the defendant handed the DEA TFO 12 30 mg oxycodone pills. The defendant informed the DEA TFO that he could get between 20 and 30 pills at one time. The defendant then exited the undercover vehicle.

Count Three:  May 19, 2014          (29) 30 mg oxycodone pills

On May 19, 2014, the DEA TFO contacted the defendant via text message and telephone calls and ordered 29 30 mg oxycodone pills for $960. The two met in downtown Rochester where the defendant informed the DEA TFO that he would need to drive them to the vicinity of 160 Charles Street. The DEA TFO then drove the defendant to a gas station in the vicinity of Charles Street. Once there, the defendant took the $960 in serialized currency from the DEA TFO, exited the vehicle and was then observed entering 160 Charles Street.   The defendant exited the residence shortly after and telephoned the DEA TFO be picked up as he walked down the street. Back in the undercover vehicle, the defendant handed the DEA TFO 29 30 mg oxycodone pills. The DEA TFO asked the defendant if the DEA TFO could meet the defendant's pill source; however, the defendant stated that that the source did not like to meet new people and refused to give the DEA TFO the source's telephone number.

4.   Penalties.

The defendant understands that the penalties for the offense include:

A.      A maximum prison term of 20 years (21 U.S.C. §841(b)(1)(C));

B.      A maximum fine of $1,000,000 (U.S.C. §841(a)(1)(C)); and

C.      A term of supervised release of at least three years and not more than life. The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. § 3583).

5

The defendant also understands that he will be required to pay a special assessment of $100 for each count of conviction ($100), at or before the time of sentencing; and that the Court may order him to pay restitution to the victim of the offense, pursuant to 18 U.S.C. § 3663 or § 3663A.

5.  <u>Sentencing and Application of the Sentencing Guidelines.</u>

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines.   The defendant further understands that he has no right to withdraw his guilty plea if the applicable advisory guideline range or his sentence is other than he anticipated, except as expressly provided in this Plea Agreement.

The defendant also understands that the United States and the United States Probation Office shall:

A.   Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.   Respond to questions from the Court;

C.   Correct any inaccuracies in the pre-sentence report;

D.   Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range within the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise, and is not binding on the United States, the Probation Office, or the Court, except as expressly provided in this Plea Agreement.

6

6.   Stipulations and Other Agreements.

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant have stipulated to the following:

The government agrees to recommend a sentence within the applicable advisory United States Sentencing Guideline range.

The defendant understands that the Court is not bound by the foregoing agreement and, with the aid of a pre-sentence report, the court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.   Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense.   The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.      fails to admit a complete factual basis for the plea at the time the defendant is

sentenced or at any other time;

B.      challenges the United States' offer of proof at any time after the plea is entered;

C.      denies involvement in the offense;

D.      gives conflicting statements about that involvement or is untruthful with the

Court, the United States or the Probation Office;

E.      fails to give complete and accurate information about the defendant's financial

status to the Probation Office;

F.      obstructs or attempts to obstruct justice, prior to sentencing;

G.      has engaged in conduct prior to signing this Plea Agreement which reasonably

could be viewed as obstruction or an attempt to obstruct justice, and has failed to

fully disclose such conduct to the United States prior to signing this Plea

Agreement;

H.      fails to appear in court as required;

I.      after signing this Plea Agreement, engages in additional criminal conduct; or

J.      attempts to withdraw the plea of guilty.

If the defendant's offense level is sixteen or greater, and the defendant has assisted the

United States in the investigation or prosecution of the defendant's own misconduct by timely

notifying the United States of the defendant's intention to enter a plea of guilty, thereby

permitting the United States to avoid preparing for trial and permitting the United States and the

Court to allocate their resources efficiently, the United States will move, at or before sentencing,

to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. §

3E1.1(b).

8

The defendant understands and agrees that the defendant may not withdraw the defendant's guilty plea if, for any of the reasons listed above, the United States does not recommend that the defendant receive a reduction in the defendant's sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is under no obligation to reduce the offense level if it finds that the defendant has not accepted responsibility.

8.  Waiver of Trial Rights and Consequences of Plea.

The defendant understands that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant.   The defendant understands that the defendant has the right:

A.      to plead not guilty or to maintain that plea if it has already been made;

B.      to be tried by a jury and, at that trial, the right to the assistance of counsel;

C.      to confront and cross-examine witnesses against the defendant;

D.      not to be compelled to provide testimony that may incriminate the defendant; and

E.      to compulsory process for the attendance of witnesses to testify in the defendant's defense.

The defendant understands that by pleading guilty the defendant waives and gives up those rights and that if a plea of guilty is accepted by the Court, there will not be a trial of any kind.

The defendant understands that if the defendant pleads guilty, the Court may ask the defendant questions about the offense, and if the defendant answers those questions falsely under oath, on the record, and in the presence of counsel, the defendant's answers may later be used against the defendant in a prosecution for perjury or making false statements.

9.  Acknowledgment of Guilt; Voluntariness of Plea.

The defendant acknowledges that the defendant:

A.    is entering into this Plea Agreement and is pleading guilty freely and voluntarily because the defendant is guilty;

B.    is entering into this Plea Agreement without reliance upon any discussions with the United States and without promise of benefit of any kind except as described in this Plea Agreement;

C.    is entering into this Plea Agreement without threats, force, intimidation, or coercion of any kind;

D.    understands the nature of the offense to which the defendant is pleading guilty, including the penalties provided by law; and

E.    is completely satisfied with the representation and advice received from the defendant's undersigned attorney.

10.    Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-federal, state or local authority.   The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from the defendant's plea of guilty.   The defendant understands such matters are solely within the discretion of the specific non-party government agency involved.   The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.    Collateral Consequences.

The defendant understands that the defendant will be adjudicated guilty of the offense to which the defendant will plead guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

10

12.   Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy any federal criminal liability of the defendant in the District of New Hampshire as a result of the defendant's participation in the conduct which forms the basis of the Indictment in this case. The defendant understands that if, before sentencing, the defendant violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw from it.

13.   Waivers.

A.   Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal.   By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.   His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2.   All aspects of the sentence imposed by the Court if the period of incarceration is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.   Collateral Review.

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

11

1.   His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2.   All aspects of the sentence imposed by the Court if the period of incarceration is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel.   The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C.   Freedom of Information and Privacy Acts.

The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D.   Appeal by the Government

This plea Agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the United States therefore retains its appeal rights.

14.   No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

12

15.   <u>Final Binding Agreement</u>.

None of the terms of this Plea Agreement shall be binding on the United States until this

Plea Agreement is signed by the defendant and his attorney and until signed by the United States

Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16.   <u>Agreement Provisions Not Severable</u>.

The United States and the defendant understand and agree that if any provision of this

Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and

void and no part of it may be enforced.

Dated:

EMILY GRAY RICE
United States Attorney

By:   _Jen C. Davis_

Jennifer Cole Davis
Assistant U.S. Attorney
NH Bar Association # 10222
53 Pleasant St., 4th Floor
Concord, NH 03301
jennifer.c.davis@usdoj.gov
(603) 225-1552

The defendant, Michael Bougie, certifies that he has read and/or has had read this
12-page Plea Agreement, and that he fully understands and accepts the terms thereof.

_Michael Bougie_                         _April 9, 2016_

Michael Bougie, defendant                Date:

I have read the above and explained it to my client, who advises me that he understands
and accepts its terms.

_____                _4/16/16_

Paul J. Garrity, Esquire,                Date:
Counsel for Michael Bougie